## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**LEWIS MICHAEL GEORGE,**

     **Plaintiff,**

     **v.**                     **CASE NO.  25-3113-JWL**

**LANE S. GREGG, et al.,**

     **Defendants.**

### MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Lewis Michael George is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

### I.  Nature of the Matter before the Court

Plaintiff filed this pro se civil rights case under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF").  The Court granted Plaintiff leave to proceed in forma pauperis.[1]

Plaintiff alleges that "[a]ll the above named defendants" have been involved in past and ongoing retaliatory actions by placing Plaintiff in punitive segregation without a disciplinary report and leaving him there for nine months.[2]  (Doc. 1, at 4.)  Plaintiff alleges that "they" have denied him placement in Protective Custody ("PC") or transfer to a different facility, thereby forcing him into General Population ("GP").  *Id*. at 4.  Plaintiff alleges that "Defendants" asked him if he had

---

[1]  The Court notes that Plaintiff filed a notice (Doc. 5) setting forth his difficulty in obtaining his inmate account statement.  Because Plaintiff subsequently submitted his account statement and has been granted leave to proceed in forma pauperis, the Court will not be taking any action on the notice.

[2]  Elsewhere in the Complaint, Plaintiff alleges that he was in segregation from mid-September 2024 until March 2025.  This is a six-month timeframe.

a problem with GP, but they refused to give "any details about what the problems could possibly be." *Id*. at 5.  Plaintiff alleges that because of these vague statements, he did not feel any urgency to request PC placement.  *Id*.  Plaintiff alleges that two days later, he was the victim of a vicious battery by another inmate, resulting in injuries to Plaintiff.  *Id*.  Plaintiff alleges that since that event, he has been placed back in PC.  *Id*.

Plaintiff alleges that Deputy Warden Clark "by and through his officers"—Devan Thomas, Deisy X. Salas Diaz, Malachi J. Mosier, and Bret A. Hackler—has unjustifiably seized Plaintiff's legal papers and other property.  *Id*.  Plaintiff acknowledges that he has received his property back except for his legal documents.  *Id*.  Plaintiff claims that "[s]ome of them are pivotal to the other civil case I have pending."  *Id*.

As Count I, Plaintiff alleges a due process violation.  He alleges that after he filed a prior case (Case No. 24-3123-HLT), Defendant Gregg "expressed his distaste to [Plaintiff] having done so, both verbally and by harassing actions."  *Id*. at 6.  As an example, Plaintiff alleges that on September 4, 2024, Defendant Gregg came to Plaintiff's cell after a shakedown and told Plaintiff and his cellmate that "one of you is going to take this DR or your [sic] both going to the hole."  *Id*.  Plaintiff alleges that Gregg then proceeded to take both of them, and released Plaintiff's cellmate that day while Plaintiff remained in segregation until he pled his case to Lt. Austin.  *Id*. at 6–7.  Plaintiff alleges that after Lt. Austin reviewed the evidence, Plaintiff was allowed to return to his cell that same day.  *Id*. at 7.  Plaintiff alleges that on September 17, 2024, Gregg and another CO1 approached Plaintiff in the dayroom and told him to cuff up because he was being escorted to segregation.  *Id*.  Plaintiff alleges that Defendant Gregg stated that "this is what happens to people who complain too much," and "I don't even know why they keep letting you come back (to C-2), but this is the last straw, I'm going to make sure you don't get to come back after this."  *Id*.  Plaintiff

alleges that Gregg placed Plaintiff in a strip-out cage and handed Plaintiff a copy of the segregation report. *Id*. Plaintiff alleges that the report states that he is being placed in segregation "pending the outcome of a disciplinary report for fighting." *Id*. Plaintiff alleges that he remained in segregation until March of 2025, despite his repeated requests to either return to C-2, be transferred to a different facility, or to return to GP "if that was [his] only option." *Id*. at 8.

Plaintiff alleges that he complained to Gregg about being in segregation because not only was he under what he describes as the "tutelage" of multiple defendants from his pending civil suit, but he was also around death row inmates with whom he had problems in the past. *Id*. Plaintiff alleges that when he asked Defendant Buchanan for supplies and asked why he was still in segregation, Buchanan responded "if I wasn't a defendant I could help you." *Id*. Plaintiff alleges that Defendants Runnels and Linson told Plaintiff that he was in segregation because he was "seen on camera fighting." *Id*. Plaintiff alleges that Defendant Clark told Plaintiff that his status was changed from "prehearing detention" to "hold over pending transfer." *Id*. at 8–9.

Plaintiff alleges that he notified Defendant Hoepner that he was concerned after Hoepner called Plaintiff into his office around April 5, 2025, and asked Plaintiff if he had any problems in GP. *Id*. at 9. Plaintiff responded "not that I'm aware of. Why what are you hearing?" *Id*. Plaintiff alleges that Hoepner responded that he didn't really know and that he was just told by administration to ask Plaintiff. *Id*. Hoepner provided Plaintiff with a PC waiver and Plaintiff signed it "Fuck You" and wrote on the bottom in bold letters "I AM NOT AWARE OF ANY PROBLEMS AT THIS TIME." *Id*. Plaintiff claims that Defendant Hoepner had been made aware of a threat to Plaintiff's safety and failed to act to protect Plaintiff. *Id*. Plaintiff alleges that Defendant Seth Berry was also in Hoepner's office during the meeting and was aware of a threat to Plaintiff's safety on April 4, 2025, and took no action to protect Plaintiff or inform Plaintiff of

the threat.  *Id*.

Plaintiff alleges that he notified Latisha Linson of his erroneous and unjustified placement in segregation.  *Id*.  Plaintiff alleges that Defendants Clark and Mosier entered his cell and seized all of his personal property and legal work.  *Id*. at 10.  Plaintiff alleges that this denied him court access because they took legal papers that had not yet been filed.  *Id*.  When Plaintiff asked why they were taking the property, he was told that the administration thought Plaintiff was dealing drugs.  *Id*.  Plaintiff alleges that they claimed that they did not find anything in his property.  *Id*.

As Count II, Plaintiff alleges cruel and unusual punishment based on the "actions stated in Count I."  *Id*. at 6.  Plaintiff alleges that during his segregation placement he was "fed glass by a death row inmate."  *Id*.  Plaintiff alleges that Defendants Gregg, Buchanan, Berry, Runnels, Linson, and Hoepner are all guilty of subjecting him to cruel and unusual punishment. *Id*. at 6, 10.

Plaintiff alleges that Defendants Gregg and Berry placed him in segregation, allowed him to remain there without due process, denied him basic human necessities, and ignored his pleas for aid when another inmate fed him glass.  *Id*. at 10.  Plaintiff states that "Defendant Buchanan further subjected [him] to cruel & unusual punishment."  *Id*.

Plaintiff alleges that Defendants Linson and Runnels were notified that Plaintiff was placed in segregation without due process and they took no action until Plaintiff was allowed to go to GP. *Id*. at 11.   Plaintiff alleges that Defendants Hoepner and Berry subjected Plaintiff to cruel and unusual punishment "by having actual knowledge that an inmate was going to batter [him] or some other danger was imminent to [Plaintiff's] health and that [he] was a member of a 'labeled' group of inmates (PC = snitch) who required higher levels of monitoring & protections."  *Id*.  Plaintiff alleges that they failed to adequately warn Plaintiff of the dangers he faced or to take action to place Plaintiff in PC to prevent it.  *Id*.  Plaintiff alleges that they subjected him to unnecessary risk.

*Id*.

As Count III, Plaintiff alleges a failure to protect, alleging that Defendants Gregg, Berry, Linson, Buchanan, Hoepner, Runnels, and Clark "all failed to protect [him] in violation of [his] 5th, 8th, & 14th Amendment rights." *Id*. at 11, 13.

As Count IV, Plaintiff alleges that Defendants Berry, Gregg, Buchanan, Hoepner, Linson, Runnels, Thomas, Mosier, and Clark retaliated against him for filing a meritorious civil suit against the Kansas Department of Corrections ("KDOC") and Centurion staff. *Id*. at 12. Plaintiff alleges that all these Defendants—at different times—made known their distaste for Plaintiff's litigation efforts. *Id*.

As Count V, Plaintiff alleges that Defendants Berry, Gregg, Buchanan, Linson, Runnels, Thomas, Mosier, and Clark all participated in obstruction of justice by inhibiting Plaintiff's litigation efforts. *Id*.

As Count VI, Plaintiff alleges that Defendants Clark, Thomas, and Mosier all took action that denied Plaintiff court access by seizing Plaintiff's legal work for his prior civil action. *Id*.

Plaintiff names as defendants: Lane S. Gregg, Unit Team Manager ("UTM") at EDCF; Seth L. Berry, II, Unit Team Supervisor ('UTS") at EDCF; Latisha L. Linson, Unit Team at EDCF; Janelle L. Buchanan, UTM at EDCF; Jeremy L. Hoepner, UTM at EDCF; Paul Runnels, UTM at EDCF; Devon Thomas, Corrections Officer ("CO") at EDCF; Deisy X. Salas Diaz, CO at EDCF; Malachi J. Mosier, CO at EDCF; Bret A. Hackler, CO at EDCF; and Tyler Clark, Deputy Warden at EDCF. Plaintiff seeks declaratory relief; injunctive relief "stopping their retaliatory conduct"; and compensatory and punitive damages. *Id*. at 14.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a

governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a

complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Due Process

#### A. Liberty

As Count I, Plaintiff alleges a due process violation based upon his placement in segregation. Plaintiff claims that he and his cellmate were placed in segregation based on having

an alleged weapon on September 4, 2024.  Plaintiff acknowledges that he was allowed to return to his cell after he pled his case to Lt. Austin and Lt. Austin reviewed the evidence.  Plaintiff alleges that he was taken to segregation again on September 17, 2024, and was given a segregation report stating that he was being placed in segregation pending the outcome of a disciplinary report for fighting.  Plaintiff alleges that Defendants Runnels and Linson told Plaintiff that he was seen on camera fighting.  Plaintiff alleges that Defendant Clark told Plaintiff his status was changed from "prehearing detention" to "hold over pending transfer."  Plaintiff alleges that he remained in segregation until March 2025.  Plaintiff does not allege that he lost good time credit.

Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).  Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification").

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction

has authorized the State to impose")).  "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)).  Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life.  *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility.  *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007)).  Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility.  *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).  Plaintiff should show good cause why his due process claim should not be dismissed for failure to state a claim.

### B. Property

Plaintiff also claims that his property was seized.  He acknowledges that his property, except for his legal documents, was returned to him.  Plaintiff's property claim is subject to dismissal.  Deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy.  A due process claim will arise only if there is no such procedure or it is inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Smith v. Colorado Dep't*

*of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees.").

Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property). Plaintiff has failed to allege that an adequate post-deprivation remedy is unavailable. Because an adequate, state post-deprivation remedy exists, Plaintiff must show good cause why his property claim should not be dismissed for failure to state a claim.

### 2. Failure to Protect

Plaintiff alleges in Count III that Defendants failed to protect him. Plaintiff alleges that Defendants Gregg, Berry, Linson, Buchanan, Hoepner, Runnels and Clark, failed to protect him for the reasons set forth in Counts I and II. (Doc. 1, at 11.) Plaintiff alleges that these defendants "are all responsible for their individual acts that have resulted in multiple physical, mental, emotional & financially irreparable harms." *Id.* at 13.

Plaintiff appears to rely on the same facts for most of his counts in his Complaint. Plaintiff alleges that he was placed in segregation instead of being placed in PC or being transferred to a different facility, "thereby forcing him into GP." (Doc. 1, at 4.) Plaintiff alleges that although they asked him if he had a problem with being placed in GP, they refused to give "any details about what the problems could possibly be." *Id.* at 5. Plaintiff alleges that two days later he was attacked by another inmate, and since that event he was placed back in PC. *Id.* Plaintiff alleges that he complained to Defendant Gregg about being in segregation because he was around defendants from his prior case and death row inmates that he had problems with in the past. *Id.* at

8.  Plaintiff claims, without explanation, that Defendants Hoepner and Berry had been made aware of a threat to Plaintiff's safety and failed to act to protect Plaintiff or inform him of the threat.  *Id.* at 9.  Plaintiff alleges that Hoepner and Berry had actual knowledge that an inmate was going to batter Plaintiff "or some other danger was imminent to [Plaintiff's] health and that [he] was a member of a 'labeled' group of inmates (PC = snitch) who required higher levels of monitoring & protections."  *Id.* at 11.

"Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)).  This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted).  To prevail on a failure to protect claim, a plaintiff must show:  "(1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Requena*, 893 F.3d at 1214 (citation omitted).

Plaintiff alleges that Defendants Hoepner and Berry had actual knowledge that an inmate was going to batter Plaintiff "or some other danger was imminent to [Plaintiff's] health and that [he] was a member of a 'labeled' group of inmates (PC = snitch) who required higher levels of monitoring & protections."  Plaintiff gives no factual details or support regarding what Defendants Hoepner and Berry knew or how they were made aware of a specific threat to Plaintiff.  Plaintiff also fails to allege how the fact that he was previously in PC made them aware of some specific

threat.  To the extent he claims that anyone previously in PC was at risk, he fails to state why he would be unaware of this general threat to PC prisoners when he signed the PC waiver.

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. (citing *Marbury*, 936 F.3d at 1238).  Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

Plaintiff fails to allege that he relayed any specific threats to Defendants or that Defendants were aware of a strong likelihood that Plaintiff would be attacked.  *See Gray v. Sorrels*, 744 F. App'x 563, 571 (10th Cir. 2018) (unpublished) (finding allegations of failure to protect too conclusory to establish personal participation and failure to allege specific content of emails); *see also Leonard v. Lincoln Cty. Bd. of Comm'rs*, 790 F. App'x 891, 894 (10th Cir. 2019) (unpublished) (finding plaintiff's general request and grievance did not put jail officials on notice that he was at risk of being assaulted).  Plaintiff should show good cause why his failure to protect claim should not be denied for failure to state a claim.

### 3. Cruel and Unusual Punishment

As Count II, Plaintiff alleges cruel and unusual punishment based on the actions stated in Count I.  Plaintiff also relies on the same facts alleged in his failure to protect claim.  Plaintiff alleges that during his placement in segregation he was "fed glass by a death row inmate." (Doc. 1,

at 6.)  Plaintiff alleges that Defendants Gregg, Buchanan, Berry, Runnels, Linson, and Hoepner "are all guilty."  *Id*.  Plaintiff alleges that Defendants Gregg and Berry placed him in segregation and ignored his pleas to address the issue of denying him basic human amenities and pleas for aid when another inmate fed him glass.  *Id*. at 10.  Plaintiff alleges that Defendants Linson and Runnels were notified that he was placed in segregation without due process and took no action until the decision was made to place Plaintiff in GP.  *Id*.  Plaintiff alleges that Defendants Hoepner and Berry failed to inform him of the dangers he faced and by failing to place him in PC, they both subjected Plaintiff to cruel and unusual punishment.  *Id*.

Plaintiff's allegations and claims are duplicative of other claims asserted in his Complaint. To the extent he argues that the failure to protect him constituted cruel and unusual punishment, the claim is subject to dismissal for the same reasons set forth above regarding his failure to protect claim.  To the extent he argues that placing him in segregation constituted cruel and unusual punishment, that claim is also subject to dismissal for the same reasons set forth above regarding his due process claim.

Plaintiff claims that a death row inmate fed him glass and his pleas for help were ignored. Plaintiff provides no factual support regarding any defendant's knowledge that Plaintiff was at risk of being fed glass by another inmate, how another inmate was able to feed him glass, or whether he received any injuries that required an answer to a plea for help.

Plaintiff alleges that when he asked Defendant Buchanan for supplies when he was in segregation, she responded that she could help him if she wasn't a defendant.  Plaintiff does not indicate how many times he asked for supplies, whether or not he asked anyone else for supplies, or how the delay in receiving supplies constituted cruel and unusual punishment.

A prison official violates the Eighth Amendment when two requirements are met. *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual

'punishments.'" *Id.*  It is not enough to establish that the official should have known of the risk of harm.  *Id.*

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.*  As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases.  Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id.* (citations omitted).

Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm."  Plaintiff has also failed to allege "deliberate indifference" by any defendant.  Plaintiff should show good cause why his cruel and unusual punishment claim should not be dismissed for failure to state a claim.

### 4. Retaliation

Plaintiff claims that all the named defendants retaliated against him by placing him in segregation without a disciplinary report.  Plaintiff alleges that Defendant Gregg "expressed his distaste" for Plaintiff's filing of his prior case, by "both verbally and harassing actions."  (Doc. 1, at 6.)  As Count IV, Plaintiff alleges that Defendants Berry, Gregg, Buchanan, Hoepner, Linson, Runnels, Thomas, Mosier, and Clark, retaliated against him for filing his prior case, and all of these defendants—at different times—made known their distaste for Plaintiff's litigation efforts. (Doc. 1, at 12.)

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted).  The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements:  (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff alleges that both he and his cellmate were sent to segregation due to a suspected weapon in the cell.  He also claims that he was sent to segregation the second time because he was seen fighting on the camera.  Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims.  Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive.

### 5. Obstruction of Justice

Plaintiff alleges obstruction of justice as Count V.  He argues that Defendants Berry, Gregg, Linson, Runnels, Thomas, Mosier, and Clark, all participated in obstruction of justice by inhibiting Plaintiff's litigation efforts.

"[T]he statutory provisions outlawing obstruction of justice do not provide a private cause of action."  *Sullivan v. Univ. of Kansas Hosp. Auth.*, 844 F. App'x 43, 51 (10th Cir. 2021) (unpublished) (citation omitted); *see also Liming Wu v. Bernhardt*, 2019 WL 1639946, at * (D. N.M. 2019).  There is no indication that Kansas courts have found that obstruction of justice can be used as the basis for a civil action.  *See Droge v. Rempel*, 180 P.3d 1094, 1097 (Kan. App. 2008) (" 'Kansas appellate courts generally will not infer a private cause of action where a statute provides criminal penalties but does not mention civil liability.' ") (quoting *Pullen v. West*, 92 P.3d 584, 597 (Kan. 2004)); *see also LeTourneau v. Venture Corp.*, Case No. 15-cv-2629-JAR, 2017 WL 2378331, at *6 (D. Kan. June 1, 2017) ("the Court is unwilling to infer a private cause of action for a statute with solely criminal penalties").  Plaintiff's obstruction of justice claim is subject to dismissal.

### 6. Court Access

As Count VI, Plaintiff alleges that Defendants denied Plaintiff court access by seizing his legal work for his prior civil action.  Plaintiff alleges that some of the documents were pivotal to his other case.  Plaintiff alleges that when he asked why his papers were being taken, he was told that the administration thought Plaintiff was dealing drugs.  Plaintiff claims that they did not find anything in his property.

It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to

courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

Plaintiff filed his other civil case on July 19, 2024. *See George v. Payne-Delano*, Case No. 24-3123-HLT-TJJ (D. Kan.). The docket in that case does not reflect any missed deadlines by Plaintiff. *Id.* Although Plaintiff asked for an extension of time to respond to the Court's order

(see Doc. 37, at 2, filed January 14, 2025), he filed his response on January 31, 2025 (Doc. 38) and the Court found that his remaining claims survived screening. *Id*. at Doc. 39. Plaintiff filed a document regarding the seizure of his paperwork, alleging that the seizure occurred on May 8, 2025. *See id*. at Doc. 42; *see also* Doc. 43 (Motion for Emergency Injunction). The Court denied Plaintiff's requests, noting they were unrelated to the claims in that case. *Id*. at Doc. 56. The docket does not reflect any missed deadlines and shows that Plaintiff has been able to litigate that case. Plaintiff was also able to file the instant case. Plaintiff has failed to show an injury for purposes of his court access claim, and it is subject to dismissal. Plaintiff should show good cause why his court access claim should not be dismissed for failure to allege the type of injury required by *Lewis*.

### 7. Personal Participation

Many of Plaintiff's allegations consist of a list of defendants that are allegedly responsible for various claims, without setting forth what each individual defendant did to violate his rights. Plaintiff also appears to rely on supervisory liability in some of his claims.

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation

omitted)).  Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability).  An official's liability may not be predicated solely upon a theory of respondeat superior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).  A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011).  "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

### 8.  Exhaustion

Plaintiff states in his Complaint that he has not exhausted his administrative remedies due to "[f]ear of further retaliatory action being perpetrated upon [him]" and that "[his] initial Informal Resolution & Grievance resulted in immediate retaliatory action."  (Doc. 1, at 14.)  It is unclear

how proceeding with the grievance process would subject him to further retaliation when he has raised these same claims in his pending case, and he filed the instant action alleging the same claims.

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).

### 9. Notice to the Court

Plaintiff filed a notice to the Court, setting forth an allegation about an incident on June 13, 2025, where he was accused of being in an altered state and had a verbal exchange with staff. (Doc. 6.) Plaintiff asks the Court to investigate the matter. *Id*. at 6. Plaintiff also asks the Court to excuse any delay in responding that may be caused by his placement in segregation. *Id*. If Plaintiff needs additional time to respond, he should file a motion seeking an extension of time. This incident occurred after this case was filed, involved staff that are not named defendants in this case, and is unrelated to Plaintiff's claims in this case. If Plaintiff believes he has a cause of action based on the incident, he should file an action after fully exhausting his administrative remedies for the claim.

## IV. Motion for Appointment of Counsel (Doc. 3)

Plaintiff has filed a Motion for Appointment of Counsel. Most of the motion is blank, and

Plaintiff has not signed the motion.

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). "Rather, a court has discretion to *request* an attorney to represent a litigant who is proceeding in forma pauperis" in a civil case. *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006) (emphasis added) (citing 28 U.S.C. § 1915(e)(1)). In other words, if this motion is granted, it means only that the Court will request that an attorney volunteer to be appointed to represent Plaintiff at no cost to Plaintiff. The Court cannot guarantee that an attorney will volunteer. *See Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016) ("Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take a case.").

The decision whether to appoint counsel—meaning to request counsel to provide representation at no cost to Plaintiff—in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to request volunteer counsel for Plaintiff, the Court has considered "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not yet

clarified and may not be complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. Thus, the Court will deny the motion without prejudice to refiling if this matter survives screening.

## V. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's claims should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein. To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (25-3113-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal

participation by each named defendant.  If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, Plaintiff's claims may be dismissed without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Appointment of Counsel (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **September 12, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **September 12, 2025**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated August 13, 2025, in Kansas City, Kansas.**

S/  John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**