IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEWIS MICHAEL GEORGE,

     Plaintiff,

     v.                         CASE NO.  25-3113-JWL

LANE S. GREGG, et al.,

     Defendants.

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Lewis Michael George is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein.

### I.  Nature of the Matter before the Court

Plaintiff filed this pro se civil rights case under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF").  The Court granted Plaintiff leave to proceed in forma pauperis.  On August 13, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 11) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC.  Plaintiff was also given the opportunity to file an amended complaint to cure the deficiencies.  This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 12).  The Court's screening standards are set forth in the MOSC.

Plaintiff alleges in his Amended Complaint that "[t]here are 3 separate major incidents which all culminate to show negligent, retaliatory, and malicious behavior." (Doc. 1, at 2) (cleaned up).  Plaintiff alleges that on September 5, 2024, Defendant Gregg told Plaintiff and his cellmate that one of them needed to take the disciplinary report because a weapon was found in their cell.

*Id*. at 9. Plaintiff alleges that during his trip to segregation, Gregg made disparaging remarks about Plaintiff's litigation efforts in Case No. 24-3123, stating "this is what happens to people who complain too much" and "if it's up to me you won't be coming back to C2 (PC)." *Id*. Plaintiff alleges that about 5–7 days later, Lt. Austin reviewed the evidence and found nothing that constituted a weapon and returned Plaintiff to C2 that day. *Id*. Plaintiff alleges that between September 2 and 17, "and multiple times prior to these Defendant Gregg made multiple harassing remarks about my litigation efforts." *Id*.

Plaintiff claims that Defendants Gregg and Berry "verbally expressed their distaste at [Plaintiff's] litigation efforts in 24-3123-HLT-TJJ, prior to & after this filing." *Id*. Plaintiff alleges that on September 17, 2024, Gregg and Berry placed Plaintiff in segregation in "pre hearing detention" status pending the outcome of a disciplinary report for fighting. *Id*. at 2, 8. Plaintiff alleges that when Gregg presented the disciplinary report to Plaintiff, Gregg commented that "this is what happens to people who complain too much" and "if its [sic] up to me & as long as I'm Unit Team Manager you can't be coming back to the [PC] C-2 cell house." *Id*. at 8. Gregg also stated "I don't know why you were allowed down here in the first place." *Id*.

Plaintiff alleges that no disciplinary report was ever issued justifying his placement in Pre-Hearing Detention. *Id*. Plaintiff alleges that when he informed Defendants Buchanan, Runnels, and Linson about being on pre-hearing detention status, they took no action to rectify the situation. *Id*. Plaintiff alleges that he was denied due process when they failed to ensure that Plaintiff had the opportunity to defend himself from the alleged disciplinary offense. *Id*. Plaintiff alleges that normally if an inmate is taken to segregation on pre-hearing detention status, they are given a disciplinary report and a hearing in which the inmate has an opportunity to defend and then be returned to their prior living situation. *Id*. at 8–9.

Plaintiff alleges that on multiple occasions after his September 17, 2024 segregation placement, Plaintiff notified Defendant Buchanan about his need for sheets, a segregation jumpsuit, toilet paper, soap, and toothpaste. *Id*. at 10. Plaintiff alleges that Buchanan was also notified about the alleged due process violation based on Plaintiff being placed in pre-hearing segregation without a disciplinary hearing. *Id*. Plaintiff alleges that Buchanan would respond that "maybe if I wasn't a defendant I could help you" or "I'm too busy being a defendant," or she would just ignore Plaintiff's pleas for assistance. *Id*. Plaintiff alleges that Buchanan was "fired" and replaced by Defendant Runnels, and Runnels and Defendant Linson continued to ignore Plaintiff's needs, and his pleas for help were met with "that's too bad maybe you should sue me" or were ignored completely *Id*.

Plaintiff alleges that he informed Buchanan on multiple occasions that inmate Thurber had made verbal threats on Plaintiff's life "in the years before." *Id*. at 11. Plaintiff alleges that one day he woke up from a nap "to a knot of coffee, creamer, capachino [sic] mixture in a plastic bag under the corner of [his] door." *Id*. Plaintiff alleges that it had a note with it from Plaintiff's friend in another cell down the tier. *Id*. Plaintiff alleges that Thurber was the one that put the items under Plaintiff's door during his duties as porter. *Id*. Because it came with a note from his friend, Plaintiff thought nothing about the coffee mixture. *Id*. Plaintiff alleges that after drinking almost all of it, he felt something heavy and gritty in his mouth. *Id*. Plaintiff spit it into a cup and saw that it was crushed glass. *Id*. Plaintiff alleges that he swallowed a significant amount before noticing this. *Id*. Plaintiff alleges that after notifying Buchanan of this, she still allowed Thurber to remain employed. *Id*. Plaintiff alleges that the incident resulted in numerous gastrointestinal problems, defecating blood, and severe abdominal pain, but when he went to medical, they did absolutely nothing to help. *Id*.

Plaintiff alleges that in March, Runnel and Linson told Plaintiff that at his fourth segregation review his request to be transferred to C-2 (PC) was denied because he had been seen on camera fighting on September 16, 2024, and therefore he was not welcome back to that unit in PC. *Id*. at 11–12. Plaintiff alleges that he then chose the only option to go to General Population ("GP") "against his better judgment." *Id*. at 12. Plaintiff alleges that two days later, he was released from segregation and placed in GP. *Id*. Plaintiff alleges that on April 5, 2025, he was called into Defendant Hoepner's office by Defendant Berry, and was asked "Do you have any problems here (GP)?" *Id*. Plaintiff responded that he was not aware of any and asked what they were hearing. *Id*. Plaintiff stated that because he had just come from PC, it would be prudent for them to tell Plaintiff what they are hearing. *Id*. Hoepner responded that they didn't know anything and were just told by Administration to ask. *Id*. at 12–13. Plaintiff claims that he was given a PC waiver to sign, and he signed it "Fuck You" and crossed out the bottom and wrote "I WAS NOT MADE AWARE OF ANY PROBLEMS AT THIS TIME!" *Id*. at 13. Plaintiff alleges that this situation was brought about by Unit Team being provided information by Administration, not by Plaintiff providing them information about a threat to his safety. *Id*. Plaintiff claims that "Administration and Unit Team had obviously been made aware of some threat to my safety at some point, by someone!" *Id*. Plaintiff alleges that he was viciously attacked by inmate Beans on April 7, 2025. *Id*.

Plaintiff alleges that SST Officers Mosier and Thomas entered his cell on May 8, 2025, and started searching his cell after making the comment that Plaintiff should "go ahead & start the lawsuit." *Id*. Plaintiff told them that their actions were illegal, and they responded that he should take it up with Deputy Warden Clark because he was the one that sent them down there. *Id*. at 14. Plaintiff alleges that these comments, along with the actions taken, show retaliation. *Id*. Plaintiff

alleges that when he received his property back, some of his legal materials were missing and never returned. *Id.* Plaintiff alleges that the items taken were directly related to the legal strategy and evidence necessary to pursue Case No. 24-3123-HLT-TJJ. *Id.*

As Count I, Plaintiff alleges that Defendant Gregg violated his due process rights on September 5 and 17, 2024, and "multiple times before & up to these dates." *Id.* at 3. Plaintiff alleges that Gregg engaged in harassing, targeting, and retaliatory behavior by making comments about Plaintiff's litigation efforts and ordering Plaintiff's placement in pre-hearing detention without a disciplinary report and leaving Plaintiff there for six months. *Id.* Plaintiff alleges that Defendant Berry was also involved in placing Plaintiff in segregation on September 17, 2024, without a disciplinary report. *Id.* at 14–15. Plaintiff alleges that Buchanan, Linson, and Runnels were made aware that he was placed in segregation without a disciplinary report, but took no action to give him an opportunity to clear his name. *Id.* at 15–16. He was just told that he was in segregation because he was seen on camera fighting. *Id.* at 16. Plaintiff also alleges that Defendants Clark, Thomas, and Mosier violated his rights by searching his cell on May 8, 2025. *Id.* at 15. Plaintiff alleges that he was told that the search was done because they believed that he was dealing drugs, but no drugs were found and no disciplinary report was issued. *Id.*

As Count II, Plaintiff alleges that Defendants Gregg and Berry violated Plaintiff's Eighth Amendment rights on September 17, 2024, by placing him in segregation where he was exposed to death row inmate Thurber, who worked as a porter and fed glass to Plaintiff. *Id.* at 3, 16. Plaintiff alleges that Defendants Linson, Buchanan, and Runnels allowed Thurber to have access to Plaintiff "after having been informed of [Plaintiff's] issues with Inmate Thurber." *Id.* at 17. Plaintiff also alleges that Hoepner and Berry violated his Eighth Amendment rights in April 2025 when they ignored a risk to Plaintiff after they were altered by Administration of a risk of some

kind. *Id*. Plaintiff alleges that he was battered two days later by inmate Beans, and "knowing that [Plaintiff] was a former PC inmate they chose to ignore those risks & thereby subjected [Plaintiff] to cruel & unusual punishment." *Id*.

As Count III, Plaintiff alleges that Defendant Buchanan allowed inmate Thurber to have access to Plaintiff through Thurber's porter job, which resulted in Thurber feeding glass to Plaintiff. *Id*. at 4. Plaintiff again alleges that Hoepner and Berry violated his Eighth Amendment rights on April 5, 2025, when they failed to provide Plaintiff with information of an upcoming attack against Plaintiff. *Id*. at 17–18. Plaintiff alleges that they misled him as to the nature and value of the information they had received. *Id*. at 18. Plaintiff alleges they failed to protect him. *Id*.

As Count IV, Plaintiff alleges that Defendants Mosier, Thomas, and Clark violated his rights on May 8, 2025, when they seized his personal property and legal work relating to Case No. 24-3123-HLT-TJJ. *Id*. Plaintiff alleges that these actions were retaliatory and had a chilling effect on his litigation efforts. *Id*.

As Count V, Plaintiff alleges that Defendant Gregg made comments before September 5, 2024, and September 17, 2024, and took retaliatory action by placing him in segregation without a hearing or disciplinary report. *Id*. at 18–19. Plaintiff alleges that on multiple occasions, Linson, Buchanan, and Runnel refused his requests for hygiene items, to have "amenities fixed in [his] cell," and to receive linens and bedding. *Id*. at 19. They also refused to answer grievances regarding Plaintiff's segregation placement and made disparaging remarks regarding Plaintiff's litigation efforts. *Id*. Plaintiff alleges that Hoepner and Berry violated his rights on April 3, 2025, and "on multiple other occasions," by failing to protect Plaintiff. *Id*. Plaintiff alleges that their failure to act, coupled with their snide and disparaging remarks, can only be viewed as retaliation.

*Id.* Plaintiff alleges that Mosier, Thomas, and Clark retaliated against him when they seized his legal work and made comments like "sue me" and "make sure you spell my name right." *Id.* at 20.

Plaintiff names as defendants:  Lane S. Gregg, Unit Team Manager ("UTM") at EDCF; Seth L. Berry, II, Unit Team Supervisor ('UTS") at EDCF; Latisha L. Linson, Unit Team at EDCF; Janelle L. Buchanan, UTM at EDCF; Jeremy L. Hoepner, UTM at EDCF; Paul Runnels, UTM at EDCF; Devon Thomas, Corrections Officer  ("CO") at EDCF; Malachi J. Mosier, CO at EDCF; and Tyler Clark, Deputy Warden at EDCF.   Plaintiff seeks $1,000,000 in punitive damages; $500,000 in compensatory damages; and $1,000,000 in "actual damages." *Id.* at 5.

## II. DISCUSSION

### 1. Due Process

#### A. Liberty

Plaintiff alleges a due process violation based upon his placement in segregation on two occasions.  Plaintiff claims that he and his cellmate were placed in segregation based on having an alleged weapon on September 5, 2024.  Plaintiff alleges that disparaging remarks were made about his litigation efforts in Case No. 24-3123 while he was being escorted to segregation.[1]  Plaintiff acknowledges that he was released several days later after Lt. Austin reviewed the evidence and found nothing that constituted a weapon. Plaintiff alleges that he was returned to Protective Custody that same day.

Plaintiff claims that he was placed in pre-hearing detention on September 17, 2024, after he was seen on camera fighting.  Plaintiff alleges that he was denied due process because he never received a disciplinary report and remained in segregation until March 2025.  Plaintiff does not

---

[1] Case No. 24-3123 was not filed until September 19, 2024.  *See George v. Payne-Delano*, Case No. 24-3123-HLT-TJJ (D. Kan.).

allege that he lost good time credit.

The Court found in the MOSC that liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification").

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose")). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)). Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted,

lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007)). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979). Plaintiff should show good cause why his due process claim should not be dismissed for failure to state a claim.

### B. Property

Plaintiff alleges that his personal property was seized during a search on May 8, 2025, and when his property was returned some of his legal work was missing. Plaintiff alleges that the actions were retaliatory and had a chilling effect on his litigation efforts.

Plaintiff's property claim is subject to dismissal. Deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy. A due process claim will arise only if there is no such procedure or it is inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Smith v. Colorado Dep't of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees.").

Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property). Plaintiff has

failed to allege that an adequate post-deprivation remedy is unavailable.  Because an adequate, state post-deprivation remedy exists, Plaintiff must show good cause why his property claim should not be dismissed for failure to state a claim.

Plaintiff has also failed to show that he was denied court access.  It is well-established that a prison inmate has a constitutional right of access to the courts.  However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions."  *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim."  *Lewis*, 518 at 354.  Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement."  *Id.* at 355.  "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  *Id.*  (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir.

1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

Plaintiff filed his other civil case on July 19, 2024.  *See George v. Payne-Delano*, Case No. 24-3123-HLT-TJJ (D. Kan.).  The docket in that case does not reflect any missed deadlines by Plaintiff after the seizure of his materials on May 8, 2025.  Plaintiff filed a document in that case regarding the seizure of his paperwork, alleging that the seizure occurred on May 8, 2025. *See id*. at Doc. 42; *see also* Doc. 43 (Motion for Emergency Injunction).  The Court denied Plaintiff's requests, noting they were unrelated to the claims in that case.  *Id*. at Doc. 56.  The docket does not reflect any missed deadlines and shows that Plaintiff has been able to litigate that case.  Plaintiff filed an objection (Doc. 47) on May 27, 2025; a motion (Doc. 48) on May 29, 2025; two motions (Docs. 53, 54) on June 2, 2025; a reply and a response (Docs. 57, 58) on June 4, 2025; a reply (Doc. 59) on June 9, 2025; a notice (Doc. 63) on June 12, 2025; a notice (Doc. 65) on June 18, 2025; a response (Doc. 69) on June 30, 2025; a notice of service (Doc. 74) on August 25, 2025; three motions (Docs. 75, 76, 77) on August 25, 2025; a response and an attachment (Docs. 80, 81) on August 29, 2025; and a reply (Doc. 83) on September 15, 2025.  Nothing appears to be due at this time in light of the Court's September 18, 2025 Order (Doc. 84) staying discovery and pretrial proceedings pending rulings on dispositive motions.  *See id*.

Plaintiff was also able to file the instant case on June 9, 2025.  Plaintiff has failed to show an injury for purposes of a court access claim.  Plaintiff should show good cause why any claim based on court access should not be dismissed for failure to allege the type of injury required by *Lewis*.  In addition, Plaintiff's filings show that Defendant's actions did not have a chilling effect on his litigation efforts.

### 2. Failure to Protect

Plaintiff alleges a failure to protect based on two incidents.  First, he alleges that he was placed in segregation where inmate Thurber, who worked as a porter, had access to Plaintiff. Plaintiff alleges that he informed Buchanan on multiple occasions that Thurber had made verbal threats on Plaintiff's life "in the years before."  Plaintiff alleges that a coffee packet was left under his cell door that contained crushed glass.  Plaintiff alleges, without explanation, that Thurber left the packet under his cell door because Thurber was a porter.  Plaintiff alleges that Buchanan allowed Thurber to remain as a porter after the incident.

The second incident is based on Plaintiff being attacked two days after he was asked if he had any problems in GP.   Plaintiff alleges that he was allowed to go back to GP in March 2025, and on April 5, 2025, he was called into Defendant Hoepner's office by Defendant Berry and asked if he had any problems in GP.  Plaintiff asked if they were aware of anything, and Hoepner responded that they were not aware of anything and were just told by Administration to ask. Plaintiff alleges that despite this response, they were obviously made aware of some threat to Plaintiff's safety at some point, by someone.  Plaintiff alleges that he was attacked on April 7, 2025.  Plaintiff alleges that because Plaintiff was formerly in PC, they should have known he was at risk.

"Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)).  This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted).  To prevail on a failure to protect claim, a

plaintiff must show: "(1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Requena*, 893 F.3d at 1214 (citation omitted).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. (citing *Marbury*, 936 F.3d at 1238). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

The Court found in the MOSC that Plaintiff failed to provide factual details or support regarding what Defendants Hoepner and Berry knew or how they were made aware of a specific threat to Plaintiff. The Court also found that Plaintiff failed to allege how the fact that he was previously in PC made them aware of some specific threat, and "[t]o the extent he claims that anyone previously in PC was at risk, he fails to state why he would be unaware of this general threat to PC prisoners when he signed the PC waiver." (Doc. 11, at 11–12.)

Plaintiff alleges that Thurber made threats to Plaintiff in previous years and that Defendants Hoepner and Berry must have been aware of some threat to Plaintiff's safety at some point, by someone. Plaintiff fails to allege that he relayed any specific threats to Defendants or that

Defendants were aware of a strong likelihood that Plaintiff would be attacked. *See Gray v. Sorrels*, 744 F. App'x 563, 571 (10th Cir. 2018) (unpublished) (finding allegations of failure to protect too conclusory to establish personal participation and failure to allege specific content of emails); *see also Leonard v. Lincoln Cty. Bd. of Comm'rs*, 790 F. App'x 891, 894 (10th Cir. 2019) (unpublished) (finding plaintiff's general request and grievance did not put jail officials on notice that he was at risk of being assaulted). Plaintiff should show good cause why his failure to protect claims should not be denied for failure to state a claim.

### 3. Cruel and Unusual Punishment

Plaintiff alleges that on multiple occasions after his September 17, 2024 segregation placement, Plaintiff notified Defendant Buchanan about his need for sheets, a segregation jumpsuit, toilet paper, soap, and toothpaste. Plaintiff alleges that Defendants Linson, Buchanan, and Runnel refused his requests for hygiene items and bedding on multiple occasions, and refused his requests to have "amenities fixed in his cell."

Plaintiff alleges that when he asked Defendant Buchanan for supplies when he was in segregation, she responded that she could help him if she wasn't a defendant. Plaintiff does not indicate how many times he asked for supplies, or how the delay in receiving supplies constituted cruel and unusual punishment.

A prison official violates the Eighth Amendment when two requirements are met. *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson*

*v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance."  *Id*.  As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases.  Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration."  *Id*. (citations omitted).

Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm."  Plaintiff has also failed to allege "deliberate indifference" by any defendant.  Plaintiff should show good cause why his cruel and unusual punishment claim should not be dismissed for failure to state a claim.

### 4. Retaliation

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper."  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted).  The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements:  (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."  *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is

imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff alleges that both he and his cellmate were sent to segregation on September 5, 2024, due to a suspected weapon in the cell. A suspected weapon would justify the segregation, and Plaintiff acknowledges that both he and his cellmate were taken to segregation. Plaintiff was released several days later after the evidence was reviewed. This also happened prior to Plaintiff filing his lawsuit in Case No. 24-3123 on July 19, 2024.

Plaintiff also claims that he was sent to segregation the second time because he was seen fighting on the camera. He claims that Defendants made disparaging remarks about his litigation efforts and retaliated against him by placing him in segregation without a disciplinary report. Although he was not given a disciplinary report, he was advised that he was not welcome back to PC due to the fighting incident caught on camera. Plaintiff does not deny that he was seen fighting. He attaches his Administrative Restrictive Housing Report that states that Plaintiff engaged in a physical altercation on September 16, 2024, and was being placed in administrative segregation "for the safety and security of the facility." (Doc. 12–1.) Plaintiff also alleges retaliation based on the search of his cell on May 8, 2025—almost a year after he filed the lawsuit in Case No. 24-3123.

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims. Plaintiff's allegations regarding retaliation are generally conclusory,

lacking facts to demonstrate any improper retaliatory motive.

## III. Response Required

Plaintiff is required to show good cause why Plaintiff's claims should not be dismissed for the reasons stated herein.  Failure to respond may result in dismissal of this matter without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **November 14, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated October 15, 2025, in Kansas City, Kansas.**

S/  John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE