IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**LEWIS MICHAEL GEORGE,**

    **Plaintiff,**

    v.                                                                    CASE NO. 25-3113-JWL

**LANE S. GREGG, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff filed this pro se civil rights case under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). The Court granted Plaintiff leave to proceed in forma pauperis. On August 13, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 11) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC. Plaintiff was also given the opportunity to file an amended complaint to cure the deficiencies. The Court screened Plaintiff's Amended Complaint (Doc. 12) and entered a Memorandum and Order to Show Cause (Doc. 14) ("MOSC II") ordering Plaintiff to show good cause why his Amended Complaint should not be dismissed for the reasons set forth in the MOSC II. This matter is before the Court on Plaintiff's response (Docs. 15, 16).

**I. Background**

Plaintiff's allegations in his Amended Complaint are set forth in detail in the MOSC II. In summary, Plaintiff alleges that "[t]here are 3 separate major incidents which all culminate to show negligent, retaliatory, and malicious behavior." (Doc. 1, at 2) (cleaned up). Plaintiff alleges that he was escorted to segregation based on allegations that either Plaintiff or his cellmate had a

weapon. Plaintiff alleges that during the trip to segregation disparaging remarks were made about Plaintiff's litigation efforts in Case No. 24-3123. Plaintiff was placed in segregation again on "pre hearing detention" status pending the outcome of a disciplinary report for fighting. Plaintiff alleges that no disciplinary report was ever issued justifying his placement in Pre-Hearing Detention.

Plaintiff alleges that he informed Defendant Buchanan on multiple occasions that another inmate had made verbal threats on Plaintiff's life "in the years before." *Id*. at 11. Plaintiff alleges that after notifying Buchanan of this, she still allowed the other inmate to remain employed as a porter where he was able to leave a coffee packet containing glass under the corner of Plaintiff's cell door. The coffee packet contained a note purportedly from Plaintiff's friend.

Plaintiff alleges that two days prior to an attack on Plaintiff by another inmate in General Population ("GP"), Defendants asked Plaintiff if he had any problems in GP. Plaintiff alleges that this shows that Defendants were aware of some risk to him when they asked him if he was okay in GP. Plaintiff alleges that "knowing that [Plaintiff] was a former PC inmate they chose to ignore those risks & thereby subjected [Plaintiff] to cruel & unusual punishment." *Id*. at 17.

Plaintiff alleges when he received his property back after a cell search some of his legal materials were missing and never returned. Plaintiff alleges that these actions were retaliatory and had a chilling effect on his litigation efforts.

## II.  DISCUSSION

The Court found in the MOSC II that Plaintiff failed to state a claim based on the loss of his property and failed to state an Eighth Amendment claim based on his requests for hygiene items and bedding on multiple occasions, and the refusal of his requests to have amenities fixed in his cell. Plaintiff has not addressed these claims in his response, and the Court finds that these claims are dismissed for failure to state a claim as set forth in the MOSC II.

Plaintiff's response does address his due process, court access, failure to protect, and retaliation claims.

**1. Due Process**

Plaintiff alleges a due process violation based upon his placement in segregation on two occasions. Plaintiff claims that he and his cellmate were placed in segregation based on having an alleged weapon on September 5, 2024. Plaintiff alleges that disparaging remarks were made about his litigation efforts in Case No. 24-3123 while he was being escorted to segregation. Plaintiff acknowledges that he was released several days later after Lt. Austin reviewed the evidence and found nothing that constituted a weapon. Plaintiff alleges that he was returned to Protective Custody that same day.

Plaintiff claims that he was placed in pre-hearing detention on September 17, 2024, after he was seen on camera fighting. Plaintiff alleges that he was denied due process because he never received a disciplinary report and remained in segregation until March 2025. Plaintiff does not allege that he lost good time credit.

The Court found in the MOSC that liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in

a particular prison or to be held in a specific security classification").

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose")). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)). Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007)). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

Plaintiff was ordered to show good cause why his due process claim should not be dismissed for failure to state a claim. In his response, Plaintiff states again that he never received

a disciplinary report for fighting after he was taken to segregation. (Doc. 15,m at 1–2.) He also acknowledges that he does not have right to remain at any particular prison or security classification. (Doc. 15, at 3.) He argues that he is claiming that his segregation placement was retaliatory. *Id*. at 4. He also claims that the failure to provide him with a disciplinary report violated K.A.R. 44-13-201(1). *Id*. Plaintiff claims that the failure to provide him with a disciplinary report within 48 hours as required by the regulation "invoked said liberty interest & due process protection." *Id*.

Violations of state law or prison regulations do not provide a cause of action under § 1983. Plaintiff must state a federal constitutional violation. State statutes do not provide a basis for liability under § 1983 which only protects rights secured by the Constitution and laws of the United States. *D.L. v. United Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) (finding that "Plaintiffs' citations to Kansas case law to support their claim . . . is unavailing, as § 1983 affords a remedy for violations of federal law and does not 'provide a basis for redressing violations of *state* law.'") (citation omitted).

Likewise, the violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007).

Plaintiff has failed to show good cause why his due process claim should not be dismissed for failure to state a claim.

### B. Court Access

Plaintiff alleges that his personal property was seized during a search on May 8, 2025, and when his property was returned some of his legal work was missing. The Court found in the MOSC II that Plaintiff failed to show that he was denied court access. It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging

"the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

Plaintiff filed his other civil case on July 19, 2024. *See George v. Payne-Delano*, Case No. 24-3123-HLT-TJJ (D. Kan.). The Court found in the MOSC II that the docket in that case did not reflect any missed deadlines by Plaintiff after the seizure of his materials on May 8, 2025. Plaintiff filed a document in that case regarding the seizure of his paperwork, alleging that the seizure occurred on May 8, 2025. *See id*. at Doc. 42; *see also* Doc. 43 (Motion for Emergency Injunction). The Court denied Plaintiff's requests, noting they were unrelated to the claims in that case. *Id*. at Doc. 56. The docket does not reflect any missed deadlines and shows that Plaintiff was able to litigate that case. Plaintiff filed an objection (Doc. 47) on May 27, 2025; a motion (Doc. 48) on May 29, 2025; two motions (Docs. 53, 54) on June 2, 2025; a reply and a response (Docs. 57, 58) on June 4, 2025; a reply (Doc. 59) on June 9, 2025; a notice (Doc. 63) on June 12, 2025; a notice (Doc. 65) on June 18, 2025; a response (Doc. 69) on June 30, 2025; a notice of service (Doc. 74) on August 25, 2025; three motions (Docs. 75, 76, 77) on August 25, 2025; a response and an attachment (Docs. 80, 81) on August 29, 2025; and a reply (Doc. 83) on September 15, 2025.

Plaintiff was also able to file the instant case on June 9, 2025. The Court found in the MOSC II that Plaintiff failed to show an injury for purposes of a court access claim, and ordered Plaintiff to show good cause why any claim based on court access should not be dismissed for

7

failure to allege the type of injury required by *Lewis*. The Court also found that Plaintiff's filings show that Defendant's actions did not have a chilling effect on his litigation efforts.

In his response, Plaintiff alleges that the seizure of his legal materials made it impossible for him to meet the "best evidence rule" in Case No. 24-3123, because he no longer possesses his original sick call receipts, returns/answers to his grievances, and unfinished/unfiled motions. (Doc. 15, at 5.) Plaintiff claims that when it comes time for him to meet the best evidence standard in Case No. 24-3123 he will no longer be able to do so. *Id*. Plaintiff also claims that although the docket in Case No. 24-3123 may not reflect it, Defendants' actions did have a chilling effect on his litigation efforts. (Doc. 16, at 3.) Plaintiff alleges that this is evidenced by the fact that he had to file multiple other motions and actions "to request & file with the court, & exhaustion of available administrative remedies in 25-3113-JWL." *Id*.

The Court entered a Memorandum and Order in Case No. 24-3123 on December 3, 2025, finding that: the Eleventh Amendment bars Plaintiff's § 1983 official-capacity claims for monetary damages and retrospective equitable relief against KDOC defendants; retrospective equitable relief is not available for Plaintiff's § 1983 individual-capacity claims against KDOC defendants; Plaintiff lacks standing for his § 1983 claims seeking prospective equitable relief against KDOC defendants; summary judgment is warranted on Plaintiff's § 1983 individual-capacity claims for money damages against KDOC defendants; the Court lacks jurisdiction over claims against the Centurion defendants for prospective injunctive relief; summary judgment is warranted in favor of the Centurion defendants based on the failure-to-exhaust arguments raised by the KDOC defendants; and that the Court declined supplemental jurisdiction for Plaintiff's state law claims. *See George v. Payne-Delano*, Case No. 24-3123-HLT-TJJ, Doc. 85 (D. Kan. December 3, 2025). The opinion addresses Plaintiff's grievances and the responses to those grievances. The grievance

8

process for his claims in that case occurred prior to Plaintiff's transfer in August 2023, and nothing in the opinion addresses the best evidence rule. *See id*. at 8–11.

Plaintiff has failed to show an actual injury for purposes of his court access claim. Plaintiff's court access claim is dismissed for failure to state a claim.

### 2. Failure to Protect

Plaintiff alleges a failure to protect based on two incidents. First, he alleges that he was placed in segregation where another inmate, who worked as a porter, had access to Plaintiff. Plaintiff alleges that he informed Buchanan on multiple occasions that the inmate had made verbal threats on Plaintiff's life "in the years before." Plaintiff alleges that a coffee packet was left under his cell door that contained crushed glass. Plaintiff alleges, without explanation, that this inmate left the packet under his cell door because this inmate was a porter. Plaintiff alleges that Buchanan allowed the inmate to remain as a porter after the incident.

The second incident is based on Plaintiff being attacked two days after he was asked if he had any problems in GP. Plaintiff alleges that he was allowed to go back to GP in March 2025, and on April 5, 2025, he was called into Defendant Hoepner's office by Defendant Berry and asked if he had any problems in GP. Plaintiff asked if they were aware of anything, and Hoepner responded that they were not aware of anything and were just told by Administration to ask. Plaintiff alleges that despite this response, they were obviously made aware of some threat to Plaintiff's safety at some point, by someone. Plaintiff alleges that he was attacked on April 7, 2025. Plaintiff alleges that because Plaintiff was formerly in PC, they should have known he was at risk.

"Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'"

9

*Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted). To prevail on a failure to protect claim, a plaintiff must show: "(1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Requena*, 893 F.3d at 1214 (citation omitted).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. (citing *Marbury*, 936 F.3d at 1238). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

The Court found in the MOSC that Plaintiff failed to provide factual details or support regarding what Defendants Hoepner and Berry knew or how they were made aware of a specific threat to Plaintiff. The Court also found that Plaintiff failed to allege how the fact that he was previously in PC made them aware of some specific threat, and "[t]o the extent he claims that anyone previously in PC was at risk, he fails to state why he would be unaware of this general

10

threat to PC prisoners when he signed the PC waiver." (Doc. 11, at 11–12.)

In his response, Plaintiff claims that because Defendants stated that Administration told them to ask Plaintiff if he had problems in GP and asked him to sign a GP waiver, "[t]his proves that someone in the chain of command had possession of information that concerned them enough they felt compelled to call Defendants Hoepner & Berry & tell them to ask [Plaintiff] if [he was'] ok." (Doc. 15, at 2.) Again, Plaintiff argues that "it is well known that anyone who is in a P.C. Unit is labeled in a bad way in some form, thereby increasing the danger level substantially in any G.P. situation." *Id*. at 3 (cleaned up).

Plaintiff alleges that the inmate made threats to Plaintiff in previous years and that Defendants Hoepner and Berry must have been aware of some threat to Plaintiff's safety at some point, by someone. Plaintiff fails to allege that he relayed any specific threats to Defendants or that Defendants were aware of a strong likelihood that Plaintiff would be attacked. *See Gray v. Sorrels*, 744 F. App'x 563, 571 (10th Cir. 2018) (unpublished) (finding allegations of failure to protect too conclusory to establish personal participation and failure to allege specific content of emails); *see also Leonard v. Lincoln Cty. Bd. of Comm'rs*, 790 F. App'x 891, 894 (10th Cir. 2019) (unpublished) (finding plaintiff's general request and grievance did not put jail officials on notice that he was at risk of being assaulted). Plaintiff has failed to show good cause why his failure to protect claims should not be dismissed for failure to state a claim.

### 3. Retaliation

Plaintiff alleges retaliation based on remarks made by Defendants, the failure to return his legal materials, and his placement in segregation on two occasions. *See* Doc. 16. In his response, Plaintiff continues to claim that the failure to return his legal materials was retaliatory and had a chilling effect on his litigation efforts. (Doc. 15, at 2.) Plaintiff alleges that it was a retaliatory

search because prior to him filing Case No. 24-3123, that type of search had not been part of daily prison life during his prior 13 years of incarceration. *Id*. Although Plaintiff acknowledges that he does not have right to remain at any particular prison or security classification, he argues that his segregation placement was retaliatory. (Doc. 15, at 3–4.)

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff alleges that both he and his cellmate were sent to segregation on September 5, 2024, due to a suspected weapon in the cell. A suspected weapon would justify the segregation, and Plaintiff acknowledges that both he and his cellmate were taken to segregation. Plaintiff was released several days later after the evidence was reviewed.

Plaintiff also claims that he was sent to segregation the second time because he was seen fighting on the camera. He claims that Defendants made disparaging remarks about his litigation efforts and retaliated against him by placing him in segregation without a disciplinary report. Although he was not given a disciplinary report, he was advised that he was not welcome back to PC due to the fighting incident caught on camera. Plaintiff does not deny that he was seen fighting. He attaches his Administrative Restrictive Housing Report that states that Plaintiff engaged in a physical altercation on September 16, 2024, and was being placed in administrative segregation "for the safety and security of the facility." (Doc. 12–1.) Plaintiff also alleges retaliation based on the search of his cell on May 8, 2025—almost a year after he filed the lawsuit in Case No. 24-3123 on July 19, 2024.

The Court found in the MOSC II that Plaintiff's claims of retaliation were subject to dismissal for failure to allege adequate facts in support of the claims. Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive. Plaintiff's response fails to cure this deficiency and fails to show good cause why his retaliation claim should not be dismissed for failure to state a claim.

## III. Request and Notice to the Court

Plaintiff has filed a "Request & Notice to Court" (Doc. 17) asking the Court to seal any further filings referencing his incident involving another inmate. Plaintiff alleges that he has received threats for being a rat/informant. (Doc. 17, at 1.) This Memorandum and Order does not

13

mention this inmate by name. Although this case is being dismissed, the Court will consider Plaintiff's request if any additional filings are made in this case that reference the incident with the inmate.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated December 5, 2025, in Kansas City, Kansas.**

          **S/ John W. Lungstrum**
          **JOHN W. LUNGSTRUM**
          **UNITED STATES DISTRICT JUDGE**